# EXHIBIT D



# Transcript of Jamie Ellis, Corporate Designee

**Date:** October 24, 2017
**Case:** Webster, et al. -v- LLR, lnc, d/b/a/ LuLaRoe

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    23

| | | |
|---|---|---|
| 1 | point in time did she work for LuLaRoe? | 10:30:49 |
| 2 | A    Not that I'm aware of. | 10:30:53 |
| 3 | MR. GRAHAM:  When you're answering your | 10:31:02 |
| 4 | questions, don't look to me or to Mark.  Just | 10:31:03 |
| 5 | whatever your memory is. | 10:31:06 |
| 6 | THE WITNESS:  I'm sorry.  I just look off | 10:31:08 |
| 7 | to the side, just whatever way I'm facing. | 10:31:10 |
| 8 | BY MS. IVERSON: | 10:31:10 |
| 9 | Q    Which I agree with that assertion, and I | 10:31:16 |
| 10 | would have brought it up, but for the relationship, | 10:31:19 |
| 11 | I wasn't too concerned if you were looking over | 10:31:21 |
| 12 | there. | 10:31:24 |
| 13 | So you said Mr. Transtrum sought you out to | 10:31:26 |
| 14 | work for the company, and I understand you started | 10:31:29 |
| 15 | around January, 2016? | 10:31:33 |
| 16 | A    Yes. | 10:31:35 |
| 17 | Q    What was your position when you started? | 10:31:35 |
| 18 | A    Senior tax analyst. | 10:31:37 |
| 19 | Q    Was there somebody that had that position | 10:31:40 |
| 20 | before you? | 10:31:46 |
| 21 | A    No. | 10:31:47 |
| 22 | Q    And has your title changed at all since | 10:31:48 |
| 23 | you've been with LuLaRoe? | 10:31:57 |
| 24 | A    No. | 10:31:58 |
| 25 | Q    What are your job responsibilities as a | 10:32:00 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                                    69

| | | |
|---|---|---|
| 1 | the first paragraph.  I don't know that you need to | 11:56:29 |
| 2 | read past 2928 except just to make sure it doesn't | 11:56:32 |
| 3 | impact that. | 11:56:36 |
| 4 | THE WITNESS:  Okay. | 11:56:42 |
| 5 | MR. GRAHAM:  Kelly, when you said the top | 11:56:53 |
| 6 | of 2928, you mean the final line? | 11:56:54 |
| 7 | MS. IVERSON:  Yeah, one sentence.  Yeah, a | 11:56:57 |
| 8 | sentence-and-a-half.  Excuse me. | 11:56:59 |
| 9 | THE WITNESS:  So just up to this line here | 11:59:01 |
| 10 | on 2928? | 11:59:03 |
| 11 | BY MS. IVERSON: | 11:59:04 |
| 12 | Q    Yes. | 11:59:05 |
| 13 | A    Okay.  Let me make sure. | 11:59:06 |
| 14 | Q    Mr. Stidham has been designated to talk | 11:59:09 |
| 15 | about the policies themselves, but you've been | 11:59:12 |
| 16 | designated to talk about LuLaRoe's communications | 11:59:15 |
| 17 | with independent retailers related to this policy as | 11:59:17 |
| 18 | well as complaints and responses to complaints. | 11:59:21 |
| 19 | So I just want to make sure we're on the | 11:59:23 |
| 20 | same page about what the policy was as of April, | 11:59:25 |
| 21 | 2016. | 11:59:32 |
| 22 | Does this document set forth the policy as | 11:59:33 |
| 23 | you understood it? | 11:59:40 |
| 24 | A    It appears that it sets forth what Audrey | 11:59:43 |
| 25 | was capable of doing. | 11:59:51 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    70

| | | |
|---|---|---|
| 1 | Q      And so as -- can we agree that as of April | 11:59:53 |
| 2 | of 2016 that across the board, Audrey collected | 12:00:03 |
| 3 | sales tax based upon a consultant location? | 12:00:07 |
| 4 | A      Yes. | 12:00:10 |
| 5 | Q      And that was regardless of where the | 12:00:16 |
| 6 | product was shipped to; is that correct? | 12:00:18 |
| 7 | A      Yes. | 12:00:23 |
| 8 | Q      Okay.  And when you say it was something -- | 12:00:24 |
| 9 | this is what Audrey was capable of doing, what do | 12:00:35 |
| 10 | you mean by that? | 12:00:41 |
| 11 | A      It's what Audrey was capable of calculating | 12:00:41 |
| 12 | at the time. | 12:00:47 |
| 13 | Q      Okay.  That restated the same sentence. | 12:00:51 |
| 14 | I'm wondering what you mean by that, if you can | 12:00:56 |
| 15 | explain that to me. | 12:01:00 |
| 16 | A      Audrey could calculate the sales tax based | 12:01:01 |
| 17 | upon the location of the retailer. | 12:01:06 |
| 18 | Q      Was the retailer able to change the sales | 12:01:09 |
| 19 | tax in Audrey when they shipped a product out of | 12:01:21 |
| 20 | state? | 12:01:24 |
| 21 | MR. GRAHAM:  Objection.  Vague and | 12:01:25 |
| 22 | ambiguous as to time. | 12:01:26 |
| 23 | If you can answer. | 12:01:27 |
| 24 | BY MS. IVERSON: | 12:01:33 |
| 25 | Q      And with time, we're talking about after | 12:01:34 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    71

| | | |
|---|---|---|
| 1 | this April of 2016 policy. | 12:01:36 |
| 2 | Was the retailer able to change the amount | 12:01:42 |
| 3 | of sales tax charged on out-of-state purchases after | 12:01:45 |
| 4 | April, 2016, and before Bless? | 12:01:51 |
| 5 | A    Before Bless?  Potentially, yes. | 12:01:53 |
| 6 | Q    Okay.  In what circumstances? | 12:02:02 |
| 7 | A    If they were using the app, they could. | 12:02:05 |
| 8 | Q    Were retailers told that they should not | 12:02:18 |
| 9 | change the sales tax rate in Audrey? | 12:02:36 |
| 10 | A    They can't change the rate in Audrey, but | 12:02:41 |
| 11 | they can change -- oh, let me rephrase this and make | 12:02:44 |
| 12 | it more clear. | 12:02:50 |
| 13 | In the app, they can change it, and we have | 12:02:52 |
| 14 | advised them not to in certain circumstances | 12:02:56 |
| 15 | depending on where they were located to change the | 12:02:59 |
| 16 | rate if they were going to a different location for | 12:03:02 |
| 17 | a pop-up. | 12:03:06 |
| 18 | Q    So the only time that they were supposed to | 12:03:12 |
| 19 | change the rate was if they were going to a | 12:03:15 |
| 20 | different location for a pop-up.  Is that a correct | 12:03:18 |
| 21 | statement? | 12:03:23 |
| 22 | A    Yes. | 12:03:24 |
| 23 | Q    Did Audrey have a limit on the number of | 12:03:24 |
| 24 | times, say, per month, per week, per year -- I don't | 12:03:27 |
| 25 | know.  You'll have to answer this -- that a | 12:03:31 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                              72

| | | |
|---|---|---|
| 1 | consultant could change their location in Audrey? | 12:03:33 |
| 2 | A    Not that I'm aware of. | 12:03:36 |
| 3 | Q    So this document that I provided here which | 12:03:36 |
| 4 | I marked as Exhibit F, this says, "Weekly Home | 12:04:01 |
| 5 | Office Update Notes."  Is this based upon some kind | 12:04:08 |
| 6 | of communication to the consultants from home | 12:04:13 |
| 7 | office? | 12:04:15 |
| 8 | A    Yes. | 12:04:18 |
| 9 | Q    Was this a communication to all | 12:04:19 |
| 10 | consultants? | 12:04:22 |
| 11 | A    Yes, all of those that joined the webinar. | 12:04:23 |
| 12 | Q    Okay.  Explain to me, then, how this April, | 12:04:30 |
| 13 | 2016, policy was disseminated to the consultants. | 12:04:42 |
| 14 | You said there's some kind of webinar. | 12:04:48 |
| 15 | A    Uh-huh, yes. | 12:04:50 |
| 16 | Q    And then what is this document?  A summary | 12:04:51 |
| 17 | of the webinar? | 12:05:00 |
| 18 | A    Yes. | 12:05:01 |
| 19 | Q    Is that sent out after the webinar? | 12:05:02 |
| 20 | A    Yes. | 12:05:04 |
| 21 | Q    Does LuLaRoe keep the webinars? | 12:05:04 |
| 22 | A    I'd have to talk to our other department | 12:05:08 |
| 23 | and see. | 12:05:11 |
| 24 | Q    Was there any other way that this April, | 12:05:13 |
| 25 | 2016, policy was disseminated to consultants other | 12:05:22 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    73

| | | | |
|---|---|---|---|
| 1 | | than the webinar and this summary? | 12:05:26 |
| 2 | A | Potentially, yes. | 12:05:46 |
| 3 | Q | How was it disseminated to all consultants? | 12:05:46 |
| 4 | A | Through email. | 12:05:51 |
| 5 | Q | And what would have been emailed?  Would it | 12:05:52 |
| 6 | | be just this document or something different? | 12:05:56 |
| 7 | A | I don't know. | 12:05:58 |
| 8 | Q | In preparing for this deposition, did you | 12:05:59 |
| 9 | | look into how LuLaRoe communicated with its | 12:06:05 |
| 10 | | independent retailers related to the April, 2016, | 12:06:09 |
| 11 | | policy? | 12:06:13 |
| 12 | A | Did I look into that? | 12:06:13 |
| 13 | Q | Yes.  Did you? | 12:06:16 |
| 14 | A | Yes. | 12:06:17 |
| 15 | Q | Okay.  What did you find about those | 12:06:18 |
| 16 | | communications? | 12:06:19 |
| 17 | A | I'm not sure I quite understand. | 12:06:20 |
| 18 | Q | What all went -- what went out to all | 12:06:28 |
| 19 | | consultants about this April, 2016, policy?  Tell me | 12:06:33 |
| 20 | | what information went to them. | 12:06:36 |
| 21 | A | Basically what you see in the documents, in | 12:06:38 |
| 22 | | the document here. | 12:06:43 |
| 23 | Q | This? | 12:06:44 |
| 24 | A | Yeah.  This would have gone to all | 12:06:44 |
| 25 | | retailers. | 12:06:47 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                                    74

1    Q    Okay.  Well, initially, you said this would          12:06:47
2    have only gone to the retailers that attended the         12:06:50
3    webinar.                                                  12:06:54
4    A    No.  Those that were at the webinar would            12:06:55
5    have heard this, and this would have been sent to         12:06:58
6    all retailers because it's the home office update         12:07:01
7    notes.                                                    12:07:04
8    Q    Okay.  At some point, a white paper was              12:07:06
9    also sent to all consultants; right?                      12:07:23
10   A    I'd have to see what document you're                 12:07:28
11   talking about.                                            12:07:31
12         MS. IVERSON:  This is going to be H and I.          12:08:25
13         (Ellis Exhibit Numbers H and I were marked         12:08:26
14   for identification.)                                      12:08:26
15   BY MS. IVERSON:                                           12:08:26
16   Q    I'm going to guess you're familiar with              12:08:31
17   these documents and don't need to read them; right?      12:08:33
18   A    I would still need to read through the               12:08:36
19   documents.                                                12:08:39
20         MR. GRAHAM:  Without rereading it in its           12:09:35
21   entirety, are you familiar with this document?           12:09:37
22         THE WITNESS:  Yes.                                  12:09:42
23         MR. GRAHAM:  Exhibit H.  And with Exhibit I        12:09:42
24   here?                                                     12:09:45
25         THE WITNESS:  Yes.                                  12:09:46

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    85

| | | |
|---|---|---|
| 1 | Q    Well, the reason that sales tax was | 13:34:57 |
| 2 | incorrectly charged was because it was set up based | 13:35:03 |
| 3 | on the location of the consultant; right? | 13:35:06 |
| 4 | A    It could be potentially incorrectly | 13:35:09 |
| 5 | charged, yes. | 13:35:12 |
| 6 | Q    Okay.  But we -- you had said it was | 13:35:12 |
| 7 | incorrectly charged.  My question is:  Was it | 13:35:15 |
| 8 | incorrectly charged because it was set up based on | 13:35:18 |
| 9 | the location of the consultant? | 13:35:21 |
| 10 | A    Not always.  So, again, not all | 13:35:22 |
| 11 | transactions were incorrectly charged. | 13:35:26 |
| 12 | Q    Okay.  For out-of-state sales from one | 13:35:29 |
| 13 | state to another, was it incorrectly charged -- | 13:35:35 |
| 14 | let's say out-of-state sales from one state to one | 13:35:39 |
| 15 | of the 11 states in the amended complaint.  Was it | 13:35:42 |
| 16 | incorrectly charged because it was set based on the | 13:35:46 |
| 17 | location of the consultant? | 13:35:48 |
| 18 | A    Yes.  For the transactions that we have | 13:35:51 |
| 19 | identified, yes. | 13:36:02 |
| 20 | Q    Was it LuLaRoe's practice to provide this | 13:36:03 |
| 21 | sales tax memo and this white paper to consultants | 13:36:08 |
| 22 | if they questioned the April, 2016, policy? | 13:36:10 |
| 23 | A    It was sent to all retailers. | 13:36:14 |
| 24 | Q    Okay.  Now, if a retailer would contact | 13:36:17 |
| 25 | LuLaRoe with questions about the policy, was it | 13:36:21 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    92

| | | |
|---|---|---|
| 1 | drafting the response? | 13:49:12 |
| 2 | A    I would assume so.  My recollection, I | 13:49:15 |
| 3 | would assume he would have been. | 13:49:29 |
| 4 | Q    It was your recollection that he was | 13:49:30 |
| 5 | involved? | 13:49:32 |
| 6 | A    Yes. | 13:49:32 |
| 7 | Q    Okay.  And in your response, you indicate | 13:49:32 |
| 8 | that in instances when the fashion consultant and | 13:49:50 |
| 9 | customer live in different sales tax jurisdictions, | 13:49:55 |
| 10 | e.g., different states, sales tax may be charged | 13:50:00 |
| 11 | incorrectly? | 13:50:03 |
| 12 | A    Uh-huh. | 13:50:04 |
| 13 | Q    So by June 28, 2016, can we agree that | 13:50:04 |
| 14 | LuLaRoe was aware that sales tax was being charged | 13:50:12 |
| 15 | incorrectly when the fashion consultant and customer | 13:50:17 |
| 16 | live in different sales tax jurisdictions, e.g., | 13:50:20 |
| 17 | different states? | 13:50:23 |
| 18 | A    Which one are we looking at?  You made a | 13:50:24 |
| 19 | reference to a response.  Which response are we | 13:50:29 |
| 20 | looking at? | 13:50:31 |
| 21 | Q    Well, both responses are essentially the | 13:50:32 |
| 22 | same.  My question is not about a response but about | 13:50:34 |
| 23 | LuLaRoe's knowledge and asking if by June 28, 2016, | 13:50:40 |
| 24 | when this response was drafted, if LuLaRoe was | 13:50:45 |
| 25 | aware, by that point in time, that when the fashion | 13:50:48 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                          93

| | | |
|---|---|---|
| 1 | consultant and customer lived in different sales tax | 13:50:56 |
| 2 | jurisdiction that sales tax may be charged | 13:50:59 |
| 3 | incorrectly? | 13:51:02 |
| 4 | A    Yes.  We made that aware even with the | 13:51:02 |
| 5 | white paper and sales tax memo. | 13:51:06 |
| 6 | Q    I'm sorry.  What did you say? | 13:51:07 |
| 7 | A    Yes.  As you saw -- as we already explained | 13:51:09 |
| 8 | in the H and I exhibit, we were aware, even at that | 13:51:14 |
| 9 | time, because we knew the best option that we could | 13:51:18 |
| 10 | do at that particular time was what was available. | 13:51:20 |
| 11 | So even at that point, as it states, we were still | 13:51:23 |
| 12 | doing the best we could with the information and | 13:51:26 |
| 13 | software that we had available at the time. | 13:51:29 |
| 14 | Q    Okay.  You want to go off the record? | 13:51:31 |
| 15 | A    I just lost my mic. | 13:51:57 |
| 16 | Q    Hey, at least it wasn't only me now.  We're | 13:52:02 |
| 17 | just waiting for you to lose yours, Steve, and we'll | 13:52:05 |
| 18 | be a trifecta here. | 13:52:10 |
| 19 | A    It just got caught on the chair. | 13:52:17 |
| 20 | Q    After this June 28, 2016, response to these | 13:52:22 |
| 21 | two attorney generals, LuLaRoe continued to follow | 13:52:28 |
| 22 | the April, 2016, policy until Bless was fully | 13:52:31 |
| 23 | integrated; right? | 13:52:35 |
| 24 | A    Yes. | 13:52:37 |
| 25 | Q    And when was Bless fully integrated?  I | 13:52:38 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    94

| | | |
|---|---|---|
| 1 | guess there was some kind of transition, and some | 13:52:43 |
| 2 | consultants used it and some didn't; is that right? | 13:52:48 |
| 3 | A    Yes. | 13:52:50 |
| 4 | Q    What date was -- let me back up. | 13:52:50 |
| 5 | Are there any consultants using Audrey now? | 13:52:54 |
| 6 | A    No. | 13:52:59 |
| 7 | Q    Okay.  What was the last date that any | 13:52:59 |
| 8 | consultant, even just one, utilized Audrey? | 13:53:01 |
| 9 | A    May 31, 2017. | 13:53:05 |
| 10 | Q    So by June 1, 2017, every consultant | 13:53:09 |
| 11 | utilized Bless? | 13:53:22 |
| 12 | A    Every consultant was off of Audrey. | 13:53:23 |
| 13 | Q    Was off of Audrey.  Okay. | 13:53:26 |
| 14 | Did you receive correspondence from any | 13:53:30 |
| 15 | other states' attorney general office regarding | 13:53:36 |
| 16 | complaints about the sales tax policy? | 13:53:40 |
| 17 | A    I believe so. | 13:53:43 |
| 18 | Q    What states? | 13:53:45 |
| 19 | A    Pennsylvania, Minnesota -- I believe it was | 13:53:48 |
| 20 | Oregon. | 13:53:59 |
| 21 | Q    Did LuLaRoe provide that information to | 13:54:00 |
| 22 | counsel? | 13:54:03 |
| 23 | A    Yes.  To CPAs and -- | 13:54:03 |
| 24 | Q    I mean, your counsel here. | 13:54:08 |
| 25 | A    Yes.  Oh, just recently it was one that we | 13:54:09 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    95

| | | |
|---|---|---|
| 1 | had just found. | 13:54:13 |
| 2 | MS. IVERSON:  I don't believe we have that, | 13:54:21 |
| 3 | Steve. | 13:54:22 |
| 4 | MR. GRAHAM:  I didn't know about this | 13:54:23 |
| 5 | myself. | 13:54:25 |
| 6 | When did you provide this? | 13:54:25 |
| 7 | THE WITNESS:  I think just a couple days | 13:54:28 |
| 8 | ago. | 13:54:29 |
| 9 | MS. IVERSON:  We don't have it from you | 13:54:31 |
| 10 | guys.  We do have it from a right-to-know request. | 13:54:33 |
| 11 | MR. GRAHAM:  So you have it? | 13:54:33 |
| 12 | MS. IVERSON:  No.  We don't have it from | 13:54:33 |
| 13 | you guys. | 13:54:33 |
| 14 | MR. GRAHAM:  You have what the state of | 13:54:36 |
| 15 | Oregon has as a -- | 13:54:37 |
| 16 | MS. IVERSON:  We have what they gave us, | 13:54:37 |
| 17 | yes. | 13:54:39 |
| 18 | MR. GRAHAM:  Okay. | 13:54:39 |
| 19 | MS. IVERSON:  But we don't have it from | 13:54:39 |
| 20 | you. | 13:54:41 |
| 21 | BY MS. IVERSON: | 13:54:41 |
| 22 | Q    Any other states besides Pennsylvania, | 13:54:50 |
| 23 | Minnesota, and Oregon? | 13:54:51 |
| 24 | A    Not to my recollection, no. | 13:54:53 |
| 25 | Q    Okay.  Did you receive complaints from | 13:54:55 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                     96

| | | |
|---|---|---|
| 1 | consumers about the sales tax policy? | 13:54:58 |
| 2 | A    Yes. | 13:55:02 |
| 3 | Q    And what was LuLaRoe's practice with regard | 13:55:02 |
| 4 | to responding to those complaints? | 13:55:07 |
| 5 | A    Usually to request to have them talk to | 13:55:09 |
| 6 | their retailers and discuss it with their retailers. | 13:55:11 |
| 7 | Unless otherwise that they could not get a hold of | 13:55:14 |
| 8 | the retailer, then we would discuss it with them and | 13:55:18 |
| 9 | issue refunds if they so requested. | 13:55:21 |
| 10 | Q    So the first response was to have them talk | 13:55:23 |
| 11 | to their retailers? | 13:55:37 |
| 12 | A    Yes.  Because they're the ones that are | 13:55:38 |
| 13 | supposed to handle customer service on the end -- | 13:55:40 |
| 14 | they're the end user, the ones involved with the | 13:55:42 |
| 15 | customers.  Our customers are our retailers. | 13:55:46 |
| 16 | Q    And that covers one of my additional | 13:55:48 |
| 17 | questions was that the retailers are kind of the | 13:55:52 |
| 18 | frontline of communication with the end consumers of | 13:55:56 |
| 19 | LuLaRoe products? | 13:56:00 |
| 20 | A    Yes. | 13:56:00 |
| 21 | Q    Okay.  And were the consultants given any | 13:56:01 |
| 22 | other information about the April, 2016, policy | 13:56:09 |
| 23 | other than what we've discussed:  The sales tax | 13:56:14 |
| 24 | memo, the white paper, the webinar, and the summary | 13:56:17 |
| 25 | of the webinar? | 13:56:22 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    97

| | |
|---|---|
| 1     A     Not to my knowledge.  I don't know if there | 13:56:24 |
| 2   was others, if others had said anything else other | 13:56:28 |
| 3   than what was directed in these. | 13:56:31 |
| 4     Q     Okay.  So the information that LuLaRoe gave | 13:56:33 |
| 5   to the consultants was the white paper saying -- | 13:56:36 |
| 6     A     This is what we're doing.  This is what the | 13:56:39 |
| 7   software is doing and our policy and our position. | 13:56:42 |
| 8     Q     And it takes the position that it is a | 13:56:46 |
| 9   proper and lawful way to do it; right? | 13:56:49 |
| 10     MR. GRAHAM:  Objection.  Calls for a legal | 13:56:51 |
| 11   conclusion. | 13:56:53 |
| 12   BY MS. IVERSON: | 13:56:55 |
| 13     Q     Go ahead.  You can answer. | 13:56:56 |
| 14     A     I can't answer if it was proper and lawful. | 13:56:58 |
| 15   That's what you guys -- | 13:57:04 |
| 16     Q     No, my question is what the white paper | 13:57:06 |
| 17   says. | 13:57:09 |
| 18     A     Which part of the white paper?  Because | 13:57:09 |
| 19   even in the white paper, it says we are doing the | 13:57:13 |
| 20   best of our ability. | 13:57:16 |
| 21     Q     Yeah, you want to be a good corporate | 13:57:18 |
| 22   citizen; right? | 13:57:19 |
| 23     A     Uh-huh.  It says, "Most effectively with | 13:57:21 |
| 24   the collective sales tax requirements of the taxing | 13:57:27 |
| 25   states while balancing the interest of consultants." | 13:57:27 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                          107

| | | |
|---|---|---|
| 1 | customer.PDF. | 14:26:18 |
| 2 | Do you know what that document is? | 14:26:21 |
| 3 | A    I can make an assumption only on which one | 14:26:22 |
| 4 | that is. | 14:26:27 |
| 5 | Q    Which one do you believe it is? | 14:26:27 |
| 6 | A    I would think it's the sales tax memo. | 14:26:29 |
| 7 | Q    Which is Exhibit H? | 14:26:32 |
| 8 | A    Which is H is what I would assume that one | 14:26:33 |
| 9 | to be. | 14:26:38 |
| 10 | Q    Okay.  And was that one of LuLaRoe's | 14:26:38 |
| 11 | practices was to send customers that sales tax memo; | 14:26:58 |
| 12 | so they could be informed on how sales tax works and | 14:26:51 |
| 13 | how they are determined? | 14:26:54 |
| 14 | A    It was one of the methods that retailer | 14:27:01 |
| 15 | support would tend to go towards. | 14:27:05 |
| 16 | Q    Okay.  Who is Andrea Hughes?  Is she | 14:27:07 |
| 17 | retailer support? | 14:27:16 |
| 18 | A    Yes. | 14:27:17 |
| 19 | Q    What does retailer support mean? | 14:27:19 |
| 20 | A    Basically our call center. | 14:27:20 |
| 21 | Q    Okay. | 14:27:26 |
| 22 | A    Call center and email team. | 14:27:26 |
| 23 | Q    Did the tax team provide this information | 14:27:28 |
| 24 | to retailer support to give out to customers? | 14:27:43 |
| 25 | A    I believe Terrel had disseminated it to all | 14:27:48 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                           108

| | | |
|---|---|---|
| 1 | departments. | 14:27:54 |
| 2 | Q    And LuLaRoe knew that these -- this sales | 14:27:55 |
| 3 | tax memo would be sent to end consumers? | 14:28:08 |
| 4 | A    Yes. | 14:28:14 |
| 5 | Q    Okay.  And the second document, 18375, in | 14:28:15 |
| 6 | this group, was an Oregon customer. | 14:28:31 |
| 7 | A    It appears. | 14:28:34 |
| 8 | Q    Okay.  And Derryl Trujillo responded. | 14:28:36 |
| 9 | Is he also in retailer support? | 14:28:43 |
| 10 | A    Yes. | 14:28:45 |
| 11 | Q    And he responded saying that sales tax is | 14:28:48 |
| 12 | calculated on the zip code of the retailer that the | 14:28:53 |
| 13 | customer purchases from? | 14:28:58 |
| 14 | A    Uh-huh, yes, he did. | 14:28:59 |
| 15 | Q    Okay.  Was that a typical response that | 14:29:00 |
| 16 | LuLaRoe would make to customers? | 14:29:03 |
| 17 | A    Not generally, no. | 14:29:10 |
| 18 | Q    And this was January 21, 2017; right? | 14:29:11 |
| 19 | A    Yeah. | 14:29:14 |
| 20 | Q    It doesn't say '17, but this policy wasn't | 14:29:14 |
| 21 | in place January of '16; right? | 14:29:20 |
| 22 | A    That's correct. | 14:29:31 |
| 23 | Q    The next page, 18432, it was pretty much | 14:29:32 |
| 24 | the same response from Derryl to a different | 14:29:39 |
| 25 | customer? | 14:29:44 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                              110

```
1        Q     But there's no indication in these         14:31:14
2   documents that any refunds were issued?               14:31:17
3        A     Yeah, not in these documents, no.           14:31:20
4        Q     Okay.  The next page, 18444, a customer,    14:31:22
5   Ms. Brainard, indicates that she had clothing          14:31:31
6   delivered to Massachusetts, and she says, "Can I be    14:31:37
7   issued a refund on the tax?"                           14:31:40
8              In response to that, did LuLaRoe issue a    14:31:48
9   refund?                                                14:31:51
10       A     It does not appear that Kia ever said        14:31:56
11  anything about issuing a refund to her.                14:32:06
12       Q     Okay.  Is Kia --                            14:32:08
13       A     But this never made it to the sales tax or  14:32:10
14  tax department either.                                 14:32:13
15       Q     Is Kia in retailer support?                 14:32:13
16       A     Yes.                                         14:32:17
17       Q     Okay.  And Kia said that the retailer        14:32:17
18  should have known that the tax is based on where the   14:32:21
19  consultant lives?                                      14:32:25
20       A     "A retailer should have known this and for  14:32:28
21  that, we do apologize" is what she stated.             14:32:31
22       Q     And that was in response, I guess, to        14:32:35
23  Ms. Brainard saying that the consultant had said it    14:32:38
24  was an issue with the LuLaRoe billing system.          14:32:41
25             Did LuLaRoe expect that the retailers would 14:32:47
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                          111

| | | |
|---|---|---|
| 1 | let the customers know that sales tax was charged | 14:32:49 |
| 2 | based upon the location of the consultants? | 14:32:54 |
| 3 | A    Yes.  When we sent the white paper or the | 14:32:59 |
| 4 | sales tax memo, when we sent all that information, | 14:33:04 |
| 5 | it was to the retailers, and it was for their being | 14:33:07 |
| 6 | able to explain how the system worked. | 14:33:12 |
| 7 | Q    Okay.  So you expected that the end | 14:33:15 |
| 8 | consumers would know that policy? | 14:33:18 |
| 9 | A    No.  We expected the retailers to know that | 14:33:21 |
| 10 | to explain it to the end customers. | 14:33:24 |
| 11 | Q    Okay.  So you did expect the retailers to | 14:33:27 |
| 12 | tell the end customers that? | 14:33:30 |
| 13 | A    Yes. | 14:33:32 |
| 14 | Q    The next page is 18499, and it looks like | 14:33:35 |
| 15 | Robin Donoghue -- I might be saying that wrong -- | 14:33:45 |
| 16 | emailed about a tax charged on a particular invoice | 14:33:50 |
| 17 | and said, "I want this refunded immediately."  And | 14:33:58 |
| 18 | Summer Johnson replied. | 14:34:10 |
| 19 | Is Summer also in retailer support? | 14:34:12 |
| 20 | A    Yes. | 14:34:14 |
| 21 | Q    Okay.  And she said tax is based on the | 14:34:15 |
| 22 | location of the consultant and then provided this | 14:34:20 |
| 23 | customer with the LuLaRoe sales tax 042016. | 14:34:23 |
| 24 | Would that be the sales tax memo or the | 14:34:30 |
| 25 | white paper? | 14:34:33 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                                    112

| | | |
|---|---|---|
| 1 | A    I believe so. | 14:34:34 |
| 2 | Q    Which one? | 14:34:34 |
| 3 | A    Sales tax memo. | 14:34:35 |
| 4 | Q    Okay.  And then she refers the customer to | 14:34:37 |
| 5 | the consultant as well? | 14:34:43 |
| 6 | A    Yes. | 14:34:50 |
| 7 | Q    And Summer didn't issue a refund; right? | 14:34:51 |
| 8 | A    No.  Sales tax was the only one that was | 14:34:54 |
| 9 | issuing the refunds, the tax department. | 14:34:58 |
| 10 | Q    At any point prior to the filing of the | 14:35:07 |
| 11 | complaint which was February 17, 2017, did LuLaRoe | 14:35:54 |
| 12 | make an announcement to all of its consultants that | 14:35:59 |
| 13 | it was going to refund the improperly charged sales | 14:36:03 |
| 14 | tax to the consumers in the 11 states identified in | 14:36:12 |
| 15 | the amended complaint? | 14:36:15 |
| 16 | MR. GRAHAM:  Objection.  Vague and | 14:36:16 |
| 17 | ambiguous, lacks foundation. | 14:36:17 |
| 18 | You can answer, Jamie. | 14:36:18 |
| 19 | THE WITNESS:  Can you rephrase the | 14:36:20 |
| 20 | question. | 14:36:21 |
| 21 | BY MS. IVERSON: | 14:36:21 |
| 22 | Q    At any point prior to February 17, 2017, | 14:36:22 |
| 23 | did LuLaRoe make an announcement to its consultants | 14:36:24 |
| 24 | or retailers that it would refund customers that | 14:36:28 |
| 25 | were overcharged sales tax in the 11 states | 14:36:36 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    113

| | | |
|---|---|---|
| 1 | identified in the amended complaint? | 14:36:41 |
| 2 | MR. GRAHAM:  Subject to my objection, | 14:36:43 |
| 3 | answer. | 14:36:44 |
| 4 | THE WITNESS:  To my knowledge, no. | 14:36:46 |
| 5 | BY MS. IVERSON: | 14:36:46 |
| 6 | Q    You participated in responding to | 14:37:03 |
| 7 | interrogatories -- | 14:37:07 |
| 8 | A    Yes. | 14:37:07 |
| 9 | Q    -- that we served; right? | 14:37:08 |
| 10 | A    Yes. | 14:37:09 |
| 11 | Q    I'm going to give those to you.  M is the | 14:37:10 |
| 12 | second set of interrogatories, and R is the first | 14:37:48 |
| 13 | set of interrogatories. | 14:37:51 |
| 14 | (Ellis Exhibit Numbers M and R were marked | 14:37:52 |
| 15 | for identification.) | 14:38:06 |
| 16 | MS. IVERSON:  I had a rhyme and reason to | 14:38:06 |
| 17 | all the numbering up until we got the designations | 14:38:08 |
| 18 | of the topics.  Sorry, Steve. | 14:38:12 |
| 19 | MR. GRAHAM:  That's okay.  Just as long as | 14:38:15 |
| 20 | they're clearly labeled. | 14:38:17 |
| 21 | BY MS. IVERSON: | 14:38:24 |
| 22 | Q    So the first set of interrogatories asked | 14:38:43 |
| 23 | how many transactions and how much was charged in | 14:38:52 |
| 24 | sales tax -- I'm sorry.  The number of sales made | 14:38:59 |
| 25 | and the total amount in dollars of sales made where | 14:39:03 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    123

| | | |
|---|---|---|
| 1 | interrogatories? | 14:57:01 |
| 2 | A    Uh-uh.  Yes. | 14:57:01 |
| 3 | Q    The response to Interrogatory Number 1 and | 14:57:03 |
| 4 | Interrogatory Number 2, how did LuLaRoe determine | 14:57:11 |
| 5 | those amounts? | 14:57:18 |
| 6 | A    By the actual invoices. | 14:57:20 |
| 7 | Q    So LuLaRoe's able to identify each | 14:57:26 |
| 8 | transaction where sales tax was charged and the | 14:57:34 |
| 9 | product was shipped into one of the 11 jurisdictions | 14:57:38 |
| 10 | named in the complaint? | 14:57:42 |
| 11 | A    After a lot of research and a lot of time | 14:57:43 |
| 12 | processing and gathering the information and where | 14:57:47 |
| 13 | it was held to combine and accurately put that | 14:57:53 |
| 14 | information together, yes. | 14:57:58 |
| 15 | Q    Okay.  You were able to ascertain the | 14:57:59 |
| 16 | different -- | 14:58:03 |
| 17 | A    At that time. | 14:58:03 |
| 18 | Q    I'm sorry.  Let me finish the question. | 14:58:04 |
| 19 | You were able to ascertain the different end | 14:58:06 |
| 20 | consumers that paid sales tax in the 11 states in | 14:58:09 |
| 21 | the complaint, who they were? | 14:58:13 |
| 22 | MR. GRAHAM:  Objection.  Lacks foundation. | 14:58:14 |
| 23 | Go ahead. | 14:58:17 |
| 24 | THE WITNESS:  Can you repeat the question? | 14:58:19 |
| 25 | /// | |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    124

| | | |
|---|---|---|
| 1 | BY MS. IVERSON: | 14:58:20 |
| 2 | Q     You were able to ascertain who the end | 14:58:20 |
| 3 | consumers were in those 11 jurisdictions that were | 14:58:24 |
| 4 | charged sales tax on transactions? | 14:58:29 |
| 5 | MR. GRAHAM:  Same objection. | 14:58:33 |
| 6 | THE WITNESS:  After much work and time and | 14:58:35 |
| 7 | effort going into programming and learning of the | 14:58:38 |
| 8 | system, getting the system to be put into place | 14:58:42 |
| 9 | where we could accurately identify where it was from | 14:58:45 |
| 10 | and to and the time and all of the effort put into | 14:58:50 |
| 11 | that particular effort long before any of this was | 14:58:56 |
| 12 | brought, it was a long, extensive road to get to | 14:59:06 |
| 13 | this point, yes. | 14:59:13 |
| 14 | BY MS. IVERSON: | 14:59:16 |
| 15 | Q     So the answer is yes?  I understand why you | 14:59:16 |
| 16 | want to explain that.  I'll just say that, you know, | 14:59:19 |
| 17 | I've had correspondence with your counsel where | 14:59:21 |
| 18 | they're saying that your plans to refund taxes | 14:59:21 |
| 19 | before the complaint was filed is not relevant at | 14:59:25 |
| 20 | this stage and that we shouldn't be asking, and so I | 14:59:25 |
| 21 | didn't designate that as a topic, and we haven't | 14:59:28 |
| 22 | been given any discovery on it. | 14:59:31 |
| 23 | So I think the question is really we're | 14:59:33 |
| 24 | able to identify who paid the tax; right? | 14:59:36 |
| 25 | A     Yes. | 14:59:41 |

| | | |
|---|---|---|
| 1 | BY MS. IVERSON: | 15:21:58 |
| 2 | Q    Okay.  Did you plan on providing any of | 15:21:59 |
| 3 | those consumers with any amount over and above the | 15:22:00 |
| 4 | actual amount of the taxes incorrectly charged? | 15:22:07 |
| 5 | A    We would refund them the taxes that they | 15:22:11 |
| 6 | were due back. | 15:22:15 |
| 7 | Q    And you would not include any kind of | 15:22:16 |
| 8 | interest on that in your plan; right? | 15:22:19 |
| 9 | A    If they were due back sales tax -- | 15:22:20 |
| 10 | MS. IVERSON:  Mr. Stidham, you'll have your | 15:22:25 |
| 11 | opportunity tomorrow. | 15:22:27 |
| 12 | MR. STIDHAM:  I'm sorry.  What? | 15:22:29 |
| 13 | MS. IVERSON:  I said you'll have your | 15:22:30 |
| 14 | opportunity tomorrow.  So if you could refrain from | 15:22:31 |
| 15 | laughing at my questions, I'd definitely appreciate | 15:22:33 |
| 16 | that. | 15:22:36 |
| 17 | MR. GRAHAM:  Kelly, just move on, you're | 15:22:37 |
| 18 | getting a little bit upset -- | 15:22:40 |
| 19 | MR. STIDHAM:  I'm pouring a glass of water. | 15:22:42 |
| 20 | MR. GRAHAM:  Mark, just -- just move on. | 15:22:45 |
| 21 | THE WITNESS:  Can you restate the question, | 15:22:46 |
| 22 | please. | 15:22:47 |
| 23 | MS. IVERSON:  Can you read back the | 15:22:47 |
| 24 | question? | 15:22:48 |
| 25 | (Record read by the reporter as follows: | 15:22:58 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    133

| | | |
|---|---|---|
| 1 | "QUESTION:    And you would not | 15:22:16 |
| 2 | include any kind of interest on that | 15:22:18 |
| 3 | in your plan; right?") | 15:22:19 |
| 4 | THE WITNESS:  We would issue back any | 15:23:00 |
| 5 | refunds that were due to the customer relating to | 15:23:02 |
| 6 | sales tax. | 15:23:05 |
| 7 | BY MS. IVERSON: | 15:23:06 |
| 8 | Q    In the exact amount of the sales tax that | 15:23:06 |
| 9 | was charged? | 15:23:11 |
| 10 | A    In the amount that they were owed back. | 15:23:11 |
| 11 | Q    Okay.  And how would you determine what | 15:23:13 |
| 12 | they were owed back? | 15:23:14 |
| 13 | A    Based upon the ship-from and ship-to | 15:23:16 |
| 14 | addresses. | 15:23:19 |
| 15 | Q    And your plan was limited to those amounts | 15:23:21 |
| 16 | and did not include any amounts above that? | 15:23:25 |
| 17 | A    It would be what they were due back. | 15:23:29 |
| 18 | Q    And when you say "what they were due back," | 15:23:33 |
| 19 | did that include any kind of interest? | 15:23:40 |
| 20 | A    Again, we would refund them based upon what | 15:23:43 |
| 21 | the sales tax that they were due back. | 15:23:46 |
| 22 | MR. GRAHAM:  So the answer is no, it did | 15:23:49 |
| 23 | not include interest; correct? | 15:23:51 |
| 24 | THE WITNESS:  Yes. | 15:23:52 |
| 25 | /// | |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                         134

1    BY MS. IVERSON:                                    15:23:57

2        Q    And it did not include any other amounts  15:23:59

3    above the amount of the sales tax that you deemed  15:24:02

4    they were due back?                                15:24:07

5        A    That we found appropriately -- that we    15:24:09

6    found to be calculated, yes, that is correct.      15:24:12

7        Q    Okay.  And was your plan only with        15:24:16

8    respect -- I'm sorry.  What states were you looking 15:24:24

9    at to refund consumers in?                         15:24:28

10       A    We would look at all transactions.        15:24:31

11       Q    So did that include transactions in states 15:24:42

12   that were not set forth in the amended complaint?  15:24:56

13       A    Absolutely, yes.                          15:25:01

14       Q    And in what instance would you -- did you 15:25:04

15   have a plan to refund people in those other states? 15:25:12

16       A    What do you mean?                          15:25:16

17       Q    Give me an --                              15:25:18

18       A    I'm just trying to get an example or what 15:25:21

19   you mean by that.  I'm not sure I quite understand. 15:25:23

20       Q    Yeah, give me an example of somebody in a 15:25:25

21   state that's not the 11 named in the amended       15:25:28

22   complaint that you planned to refund.  What would a 15:25:31

23   transaction look like?                             15:25:36

24       A    That they be overcharged sales tax.       15:25:42

25       Q    So would it be if their sales tax rate was 15:25:46

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    144

| | | |
|---|---|---|
| 1 | BY MS. IVERSON: | 15:43:19 |
| 2 | Q    Okay.  Explain that to me. | 15:43:19 |
| 3 | A    When I came into LuLaRoe, I went back to | 15:43:21 |
| 4 | reconcile all of the previous filings to ensure that | 15:43:25 |
| 5 | we had reported all sales, and the information that | 15:43:29 |
| 6 | I had received from control then at the time for | 15:43:32 |
| 7 | those sales had given us what sales were done, and | 15:43:36 |
| 8 | we filed and remitted based upon those sales, not | 15:43:40 |
| 9 | necessarily how much was collected. | 15:43:44 |
| 10 | And it wasn't until later that we found out | 15:43:48 |
| 11 | it wasn't until -- that it wasn't what we collected. | 15:43:51 |
| 12 | It was just based on the sales that was processed | 15:43:54 |
| 13 | through Audrey. | 15:43:57 |
| 14 | Q    Okay.  I'm not really understanding.  Maybe | 15:43:58 |
| 15 | let me tell you what I'm hearing and you tell me if | 15:44:03 |
| 16 | I'm correct. | 15:44:06 |
| 17 | A    Okay. | 15:44:07 |
| 18 | Q    Is it that you went back and looked at the | 15:44:07 |
| 19 | out-of-state sales in which instances the | 15:44:13 |
| 20 | consultants probably would have not charged sales | 15:44:18 |
| 21 | tax, and you actually went through and paid sales | 15:44:21 |
| 22 | tax to the states for that? | 15:44:24 |
| 23 | A    We paid it on all sales.  So whether it | 15:44:25 |
| 24 | was -- if they did not charge or did charge, the | 15:44:29 |
| 25 | only report that we received from control pad was | 15:44:32 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    145

| | | |
|---|---|---|
| 1 | what sales were actually done, not the amount of | 15:44:35 |
| 2 | sales tax that was collected for prior.  So when we | 15:44:39 |
| 3 | were receiving that data, we received what sales | 15:44:43 |
| 4 | were actually done.  So we, therefore, then | 15:44:45 |
| 5 | submitted and paid the sales tax based upon those | 15:44:48 |
| 6 | sales figures. | 15:44:52 |
| 7 |     Q    Okay.  So prior to April, 2016, you were | 15:44:52 |
| 8 | actually paying the sales tax to states or -- when | 15:44:56 |
| 9 | sales tax was not collected from a customer? | 15:45:04 |
| 10 |     A    Yes. | 15:45:07 |
| 11 |     Q    And when you changed to the April, 2016, | 15:45:08 |
| 12 | policy, that was no longer the case? | 15:45:10 |
| 13 |     A    We were still paying based on the sales but | 15:45:14 |
| 14 | also on how much we had collected from the sales | 15:45:18 |
| 15 | tax.  So it was reconciling back. | 15:45:21 |
| 16 |     Q    So you were no longer paying tax that | 15:45:22 |
| 17 | wasn't collected from the customer; is that right? | 15:45:27 |
| 18 |     A    Yes. | 15:45:29 |
| 19 |     Q    Okay.  And did you ever reconcile how much | 15:45:29 |
| 20 | in sales tax you paid to states that had not been | 15:45:35 |
| 21 | collected from customers because of that toggle | 15:45:39 |
| 22 | switch? | 15:45:44 |
| 23 |     A    I did a reconciliation but not | 15:45:46 |
| 24 | necessarily -- I believe we've done a reconciliation | 15:45:49 |
| 25 | of that, yes. | 15:45:51 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    146

| | | |
|---|---|---|
| 1 | Q    Okay.  Do you know approximately what that | 15:45:51 |
| 2 | was? | 15:45:54 |
| 3 | A    I don't.  Not off the top of my head right | 15:45:54 |
| 4 | now, no. | 15:45:57 |
| 5 | Q    Do you know if it was in the thousands, | 15:45:57 |
| 6 | hundred thousands, millions? | 15:45:59 |
| 7 | A    No, I don't. | 15:46:01 |
| 8 | Q    All right.  And I think -- I mean, we've | 15:46:06 |
| 9 | been told this, but I do want to understand from you | 15:46:25 |
| 10 | and get it on the record.  I'm going to -- I'm going | 15:46:27 |
| 11 | to give you an example, and I just want to know what | 15:46:32 |
| 12 | happens with the sales tax collected.  So if an end | 15:46:35 |
| 13 | consumer in Pennsylvania, which doesn't have sales | 15:46:38 |
| 14 | tax on clothing, purchased on Facebook or online | 15:46:42 |
| 15 | through a consultant who was located in a sales tax | 15:46:47 |
| 16 | state, let's say Washington just for part of this | 15:46:51 |
| 17 | example, and paid a dollar in sales tax, what would | 15:46:55 |
| 18 | happen to that dollar? | 15:47:01 |
| 19 | A    It would have been remitted to Washington. | 15:47:02 |
| 20 | Q    I think in your declaration you said there | 15:47:05 |
| 21 | was some kind of segregated account that it goes | 15:47:10 |
| 22 | into first? | 15:47:14 |
| 23 | A    Yes.  It would have gone into the separated | 15:47:14 |
| 24 | from operating accounts.  It's a completely separate | 15:47:18 |
| 25 | tax account that we have that just holds sales tax | 15:47:22 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                                   148

| | | |
|---|---|---|
| 1 | Q    When you say "earlier this year," can you | 15:48:24 |
| 2 | be more specific? | 15:48:27 |
| 3 | A    Unfortunately, I didn't make the decision | 15:48:28 |
| 4 | on that.  All I know is that it did start to earn | 15:48:29 |
| 5 | interest. | 15:48:33 |
| 6 | Q    Was that prior to February 17, 2017? | 15:48:33 |
| 7 | A    I don't know off the top of my head, but | 15:48:38 |
| 8 | we've also never taken any funds from the account | 15:48:48 |
| 9 | other than for sales tax, whether refunded to the | 15:48:52 |
| 10 | customer or given to the state. | 15:48:56 |
| 11 | Q    All right.  So in that example I gave where | 15:49:04 |
| 12 | an end consumer in Pennsylvania bought from someone | 15:49:07 |
| 13 | in Washington and was charged a dollar in sales tax, | 15:49:09 |
| 14 | what if they had three transactions?  One was | 15:49:12 |
| 15 | Washington, one was Hawaii, one was Alabama, and | 15:49:15 |
| 16 | they paid a dollar sales tax on each of those | 15:49:19 |
| 17 | transactions, what would happen to that $3? | 15:49:23 |
| 18 | A    It would go to each of the three states. | 15:49:27 |
| 19 | One would go to Washington, one would go to Hawaii, | 15:49:30 |
| 20 | and one would go to Alabama after being deposited | 15:49:33 |
| 21 | into the sales tax account. | 15:49:37 |
| 22 | Q    But it would not be paid to Pennsylvania; | 15:49:38 |
| 23 | is that right? | 15:49:40 |
| 24 | A    No. | 15:49:40 |
| 25 | Q    So generally, the sales tax that was | 15:49:40 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017

149

| | | |
|---|---|---|
| 1 | charged was paid into the state in which the | 15:49:45 |
| 2 | consultant lived? | 15:49:48 |
| 3 | A     Based upon, as you see, in the sales tax | 15:49:49 |
| 4 | memo, yes. | 15:49:52 |
| 5 | Q     Okay.  Does LuLaRoe receive any kind of | 15:49:52 |
| 6 | collection discount for taxes paid into any of the | 15:50:07 |
| 7 | states? | 15:50:11 |
| 8 | A     Yes.  There are certain timely filing | 15:50:13 |
| 9 | discounts or paying on time discounts, yes, for | 15:50:20 |
| 10 | certain states. | 15:50:24 |
| 11 | Q     Do you know what the range of those | 15:50:24 |
| 12 | discounts is? | 15:50:26 |
| 13 | A     From $50 up just depending on what the | 15:50:29 |
| 14 | state deems.  But none of those funds were ever | 15:50:33 |
| 15 | taken from the sales tax account and were always | 15:50:41 |
| 16 | left in the sales tax account. | 15:50:44 |
| 17 | Q     I'm sorry.  I'm just double-checking what | 15:50:47 |
| 18 | you were designated for to make sure I'm segregating | 15:51:12 |
| 19 | my questions accordingly. | 15:51:17 |
| 20 | A     No problem. | 15:51:20 |
| 21 | Q     Okay.  I think we'll move quickly for the | 15:51:21 |
| 22 | rest of this, I hope. | 15:51:42 |
| 23 | MR. GRAHAM:  I don't have a dinner | 15:51:49 |
| 24 | reservation till 9:00; so feel free to take your | 15:51:50 |
| 25 | time. | 15:51:55 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                          155

```
 1   BY MS. IVERSON:                                    16:01:52

 2       Q    I just wanted to make sure.              16:01:52

 3            MR. GRAHAM:  I didn't assign that one to  16:01:54

 4   Mark.                                              16:01:56

 5            MR. STIDHAM:  No problem.                 16:01:57

 6   BY MS. IVERSON:                                    16:01:58

 7       Q    All right.  Have you looked into the      16:01:58

 8   purchases of each of the named plaintiffs?         16:02:00

 9       A    Yes.                                      16:02:02

10       Q    Do you agree that each were charged sales 16:02:03

11   tax on at least one purchase?                      16:02:06

12       A    Yes.                                      16:02:07

13       Q    And consistent with what we talked about, 16:02:08

14   is it LuLaRoe's position that the tax that was     16:02:14

15   charged to the 11 named plaintiffs was based on the 16:02:17

16   taxing jurisdiction of the consultant they purchased 16:02:20

17   from?                                              16:02:23

18       A    Yes.                                      16:02:24

19       Q    And the sales tax that LuLaRoe collected  16:02:26

20   from each of the named plaintiffs was paid into the 16:02:35

21   taxing jurisdiction which the consultant resides?  16:02:40

22       A    Yes.                                      16:02:43

23       Q    And not into the jurisdiction where the  16:02:46

24   11 -- any of the jurisdictions where the 11 named  16:02:52

25   plaintiffs live?                                   16:02:55
```

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                           156

| | | |
|---|---|---|
| 1 | A      Yes. | 16:02:56 |
| 2 | Q      Okay.  And some of the named plaintiffs | 16:02:56 |
| 3 | bought from consultants in multiple states that | 16:03:01 |
| 4 | charge sales tax; is that right? | 16:03:05 |
| 5 | A      They just bought from multiple consultants | 16:03:06 |
| 6 | from multiple states. | 16:03:09 |
| 7 | Q      Yes. | 16:03:09 |
| 8 | A      Some of them had sales tax.  Some of them | 16:03:12 |
| 9 | did not. | 16:03:14 |
| 10 | Q      Okay.  Do you know, for instance, Rachel | 16:03:14 |
| 11 | Webster, how many different states she purchased | 16:03:18 |
| 12 | from that charged sales tax? | 16:03:24 |
| 13 | A      Not right now, no, I do not. | 16:03:26 |
| 14 | Q      Okay.  And if, for example -- and I don't | 16:03:31 |
| 15 | know the correct number, but say she purchased from | 16:03:36 |
| 16 | consultants in five different states that charged | 16:03:41 |
| 17 | sales tax, it's correct that that money that was | 16:03:43 |
| 18 | collected from Ms. Webster would have been paid into | 16:03:45 |
| 19 | those five different states? | 16:03:49 |
| 20 | A      Yes. | 16:03:51 |
| 21 | Q      Okay.  And that answer would be the same | 16:03:52 |
| 22 | for each of the plaintiffs? | 16:03:55 |
| 23 | A      Yes. | 16:03:57 |
| 24 | Q      And would that answer be the same, then, | 16:03:59 |
| 25 | for each of the end users that received LuLaRoe | 16:04:01 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                          157

| | | |
|---|---|---|
| 1 | products in one of the 11 jurisdictions named in the | 16:04:06 |
| 2 | amended complaint when they purchased from a | 16:04:10 |
| 3 | consultant in a state with sales tax? | 16:04:13 |
| 4 | A    Yes.  That was based on what our system | 16:04:16 |
| 5 | could do at the time. | 16:04:19 |
| 6 | Q    Did -- since issuing refunds after the | 16:04:20 |
| 7 | complaint was filed, did LuLaRoe go back to the | 16:04:40 |
| 8 | states to request adjustments under the co-vendor | 16:04:45 |
| 9 | agreements? | 16:04:49 |
| 10 | A    Yes.  We took the credits for those | 16:04:50 |
| 11 | particular locations where sales tax was refunded | 16:04:54 |
| 12 | from to the customers and took the credits back on | 16:04:58 |
| 13 | those particular states where it was paid. | 16:05:04 |
| 14 | Q    I think at one point I read that | 16:05:06 |
| 15 | Mr. Stidham had called it a zero sum game. | 16:05:12 |
| 16 | Would you agree with that? | 16:05:16 |
| 17 | A    What do you mean by -- I'm trying to | 16:05:17 |
| 18 | understand what you mean by "zero sum game." | 16:05:20 |
| 19 | Q    That the amounts you refunded that was | 16:05:23 |
| 20 | either from your sales tax account or you would have | 16:05:34 |
| 21 | received it back from the states; so LuLaRoe was not | 16:05:37 |
| 22 | ultimately out any money for refunding these taxes? | 16:05:42 |
| 23 | A    We were never enriched by the sales tax at | 16:05:47 |
| 24 | all.  It was, as he said, a zero gain or loss on our | 16:05:50 |
| 25 | behalf because it's not our funds.  It was coming | 16:05:56 |

Transcript of Jamie Ellis, Corporate Designee
Conducted on October 24, 2017                    158

| | | |
|---|---|---|
| 1 | from the customer -- the end consumer and was paid | 16:06:00 |
| 2 | to the state.  If it was paid to the incorrect | 16:06:04 |
| 3 | state, we got the credit and paid it to the correct | 16:06:06 |
| 4 | state or refunded the customer; so, therefore, any | 16:06:09 |
| 5 | offsets would have offset each other and would not | 16:06:12 |
| 6 | have been anything to LuLaRoe. | 16:06:17 |
| 7 |         MS. IVERSON:  I think I'm done.  Do you | 16:06:31 |
| 8 | mind if we take a quick five-minute break? | 16:06:33 |
| 9 |         MR. GRAHAM:  No problem. | 16:06:37 |
| 10 |         MS. IVERSON:  I'd like to re-review my | 16:06:38 |
| 11 | outline. | 16:06:40 |
| 12 |         THE VIDEOGRAPHER:  The time is 4:06 p.m. | 16:06:42 |
| 13 | We're now off the record. | 16:06:44 |
| 14 |         (Recess taken from 4:06 p.m. to 4:25 p.m.) | 16:06:45 |
| 15 |         THE VIDEOGRAPHER:  The time is 4:25 p.m., | 16:25:25 |
| 16 | and we're back on the record. | 16:25:27 |
| 17 | BY MS. IVERSON: | 16:25:28 |
| 18 |     Q    On Exhibit R, which is the first set of | 16:25:30 |
| 19 | interrogatories, we asked you about how many and how | 16:25:33 |
| 20 | much you had charged in sales tax to the | 16:25:40 |
| 21 | jurisdictions in the amended complaint, and then we | 16:25:45 |
| 22 | also asked you about the refunds that you issued. | 16:25:47 |
| 23 |     A    Uh-huh. | 16:25:51 |
| 24 |     Q    And those numbers matched; right? | 16:25:51 |
| 25 |     A    Say that again. | 16:25:55 |